IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAYLENE VERRECCHIA, et al., | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | NO. 16-0284 |

**MEMORANDUM**

Padova, J.                                                                             January 19, 2016

      Plaintiffs brought this action against the City of Philadelphia and seven Philadelphia Police Officers asserting federal and state claims for violations of their rights in connection with the arrest of Plaintiff Raylene Verrecchia. Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[1] For the following reasons, we grant in part and deny in part Defendants' Motion to Dismiss.

**I.    FACTUAL BACKGROUND**

      The Complaint alleges the following facts. Plaintiff Verrecchia is a Philadelphia resident. (Compl. ¶ 2.) Plaintiff Arthur Camp is Verrecchia's "paramour" and Plaintiff Cassidy Biedrzycki is her minor daughter. (Id. ¶¶ 3-4.) On January 28, 2014, an unidentified police officer knocked on the front door of Plaintiffs' home and asked to be let inside. (Id. ¶ 8.) Without waiting for a response, four officers kicked in the door. (Id. ¶ 9.) Two of the officers entered the residence with their guns drawn, while the other two waited outside. (Id.) When the officers entered the residence, Camp was walking down the stairs to open the door. (Id. ¶ 31.) The officers forcibly pushed Camp back up the stairs, and three or four of the officers arrested

---

[1]Although Defendants state that they are moving to dismiss the Complaint in its entirety, they only specifically address Counts One, Two, and Five. Accordingly, we only consider these Counts.

Verrecchia, treating her roughly.  (Id. ¶¶ 10, 12.)  Camp objected to Verrecchia's arrest and rough handling, but was told that he would be arrested if he did not  "shut the fuck up."  (Id. ¶ 15.)  One of the arresting officers called Camp a "Nigger" and also used the word "Niggershit." (Id. ¶ 16.)  Cassidy heard the officers yell at Verrecchia and Camp, and witnessed the officers drawing their guns and arresting her mother.  (Id. ¶¶ 34-35.)

The arresting officers informed Verrecchia that she was being arrested for violation of a protection of abuse ("PFA") Order that protected her mother.  (Id. ¶ 13.)  In fact, however, Verrecchia's mother had not obtained a PFA Order against her daughter; rather, Verrecchia had obtained a PFA Order against her mother.  (Id. ¶ 20.)  Nevertheless, Verrecchia was charged with "Contempt for Violation of Order or Agreement" in violation of 23 Pa. Cons. Stat. § 5114 and "Harassment – Subjecting Other to Physical Contact" in violation of 18 Pa. Cons. Stat. § 2709. (Id. ¶ 19.)  She was imprisoned and bail was set at $2,000.00.  (Id. ¶ 18.)

Five days prior to Verrecchia's arrest, on January 23, 2014, Defendant Detective Guarna had filed a criminal complaint against Verrecchia for both violation of the PFA Order and Harassment.  (Id. ¶ 21.)  On January 27 or 28, 2014, Defendant Detective Tague recommended that Verrecchia be arrested for making terroristic threats, and Defendant Sergeant Krause approved that recommendation.  (Id. ¶ 22.)  In the meantime, Detective Guarna prepared a police report accusing Verrecchia of "[a]ssault and terroristic threats," and Defendant Sergeant Dougherty approved that report.  (Id.)

Because Verrecchia was actually the individual protected by the PFA Order, and thus could not have violated the Order, the police officers lacked probable cause to arrest her.[2]  (Id. ¶¶

---

[2] The Complaint alleges that Verrecchia was the "plaintiff and protected person for Case No. 1307V7306, which was a matter of record at the Court of Common Pleas Family Division – Domestic Relations." (Compl. ¶ 24.)  The Complaint further alleges that prior to recommending

20, 24, 26.) Defendants not only knew that they lacked probable cause to arrest Verrecchia, but also had no other legal basis to arrest her. (Id. ¶¶ 26, 29.) As a result, the charges against Verrecchia were dismissed on May 13, 2014. (Id. ¶ 27.)

Plaintiffs filed the instant action on January 22, 2016. Count One asserts claims against Officer Johnson, Detective Guarna, Sergeant Dougherty, Detective Tague, Officer Balmer, Officer Mendez, and Sergeant Krause pursuant to 42 U.S.C. § 1983 for deprivation of Plaintiffs' Fourth and Fourteenth Amendment rights to be free from false arrest, false imprisonment, and malicious prosecution. (Id. ¶¶ 45-48.) Count Two asserts a claim against Officer Johnson pursuant to 42 U.S.C. § 1983 for deprivation of Plaintiffs' Fourth and Fourteenth Amendment rights to be free from excessive force. (Id. ¶¶ 48-50.) Counts Three and Four assert claims against unknown/unnamed members of the City of Philadelphia Police Department pursuant to 42 U.S.C. § 1983 for deprivation of Camp's First Amendment right to speech and his Fourteenth Amendment right to be free from racial discrimination. (Id. ¶¶ 51-56) Count Five asserts a Monell claim against the City of Philadelphia for failure to train, supervise, and discipline. (Id. ¶¶ 57-59.) Finally, Count Six asserts state law claims for assault and battery, malicious prosecution, and intentional infliction of emotional distress against all of the individual Defendants. (Id. ¶¶ 60-62.)

## II.   LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as

---

the filing of criminal charges for the violation of a PFA order, all Police Officers are required to review court records to ensure that the PFA order is accurate. (Id. ¶ 23.) Here, the PFA Order Verrecchia obtained against her mother also stated: "[t]he following is a PSP Protection Order Record. Do not search, detain or arrest solely based on this record. Contact entering agency to confirm status and terms of Protection Order." (Id.)

undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  We take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff." DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  Legal conclusions, however, receive no deference, as the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2), and Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  Ultimately, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'"  W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

**III.    DISCUSSION**

Defendants argue that we should dismiss Counts One and Two because the factual allegations do not plausibly allege that the Defendant Officers were personally involved in a violation of Plaintiffs' rights. Defendants also argue that we should dismiss the Monell claim in Count Five because Plaintiffs have failed to identify a policy or custom that could give rise to such a claim.

A.    Count One

Count One of the Complaint asserts § 1983 claims against the individual Defendants for violation of Plaintiffs' Fourth Amendment right to be free from false arrest, false imprisonment, and malicious prosecution.[3] The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." U.S. Const. amend. IV.[4]

---

[3] There are two elements to a false arrest claim made pursuant to § 1983: "(a) that an arrest occurred; and (b) that the arrest was made without probable cause." Brown v. Makofka, 644 F. App'x 139, 143 (3d Cir. 2016) (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995)). The elements of a false imprisonment claim under § 1983 are "(1) that [the plaintiff] was detained; and (2) that the detention was unlawful." James v. City of Wilkes-Barre, 700 F.3d 675, 682-83 (3d Cir. 2012) (citing Wallace v. Kato, 549 U.S. 384, 389 (2007)). To state a Fourth Amendment claim for malicious prosecution pursuant to § 1983, a complaint must allege the following:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

[4] The Fourth Amendment has been made applicable to the states by the Fourteenth Amendment. Baker v. McCollan, 443 U.S. 137, 142 (1979).

5

Plaintiffs have brought these claims pursuant to 42 U.S.C. § 1983, which provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (footnote omitted) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985) (stating that § 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere" (citing Baker, 443 U.S. at 144 n.3)). To state a claim for relief pursuant to § 1983, "a plaintiff must demonstrate [that] the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Kaucher, 455 F.3d at 423 (citations omitted); see also Schneyder v. Smith, 653 F.3d 313, 319 (3d Cir. 2011).

Defendants argue in their Motion to Dismiss that Count One should be dismissed because the Complaint fails to plausibly allege that the Defendants were personally involved in the arrest, imprisonment, and prosecution of Verrecchia. The United States Court of Appeals for the Third Circuit has explained that an individual "'defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). A complaint may show personal involvement "'through allegations of personal direction or of actual knowledge and

6

acquiescence.'" Id. (quoting Rode, 845 F.2d at 1207); see also Mincy v. Deparlos, 497 F. App'x 234, 239 (3d Cir. 2012) ("A plaintiff must allege 'personal direction' or 'actual knowledge and acquiescence.'" (quoting Argueta v. U.S. Immigration & Customs Enforcement, 643 F.3d 60, 72 (3d Cir. 2011))). Specifically, a complaint must include allegations "identifying how [the defendant's] conduct caused [the plaintiff] to suffer." Walker v. Mathis, No. 16-3681, 2016 WL 7107923, at *3 (3d Cir. Dec. 6, 2016) (per curiam); see also Wright v. Warden, Forest SCI, 582 F. App'x 136, 137 (3d Cir. 2014) (finding no personal involvement in plaintiff's allegation that a prison official did nothing in response to plaintiff's grievance, noting that "[c]ourts are not required to credit such bald assertions when deciding a motion to dismiss" (citing Evancho, 423 F.3d at 354)).

### 1. Defendants Guarna, Tague, Krause, and Dougherty

Defendants contend that the Complaint's allegations regarding the involvement of Detective Guarna, Detective Tague, Sergeant Krause, and Sergeant Dougherty in Verrecchia's false arrest, false imprisonment, and malicious prosecution are rooted in a theory of respondeat superior liability, which cannot confer § 1983 liability on Defendants. Plaintiffs argue that, although Detective Guarna, Sergeant Dougherty, Detective Tague, and Sergeant Krause were not the arresting officers, the Complaint's allegations regarding their actions are sufficient to state a § 1983 claim because "[w]ithout their respective approval of criminal charges, there never would have been an illegal arrest and prosecution." (Pls.' Resp. at 6.)

The Third Circuit has stated that "§ 1983 liability for an unlawful arrest can extend beyond the arresting officer to other officials whose intentional actions set the arresting officer[s] in motion." Berg v. Cty of Allegheny, 219 F.3d 261, 272 (3d Cir. 2000). Here, the Complaint alleges that Detective Guarna not only authored the criminal complaint that touched off the series

7

of events leading to Verrecchia's arrest, but also prepared the subsequent police report accusing Verrecchia of "Assault and terroristic threats." (Compl. ¶¶ 21-22.) It further alleges that Detective Tague recommended that Verrecchia be arrested, that Sergeant Krause approved that recommendation, and that Sergeant Dougherty approved Detective Guarna's recommendation. (Id. ¶ 22.) In addition, the Complaint alleges that all of these actions led to Verrecchia's arrest and prosecution. (Id. ¶ 46.) Under these circumstances, we conclude that the Complaint adequately alleges that Detectives Guarna and Tague, and Sergeants Dougherty and Krause, were personally involved in the arrest and subsequent prosecution of Verrecchia, and that the Complaint thus states a facially plausible § 1983 claim against those Defendants for false arrest, false imprisonment, and malicious prosecution. See Berg, 219 F.3d at 272 ("As a general rule, a government official's liability for causing an arrest is the same as for carrying it out." (citing Gordon v. Degelmann, 29 F.3d 295, 298 (7th Cir. 1994)) (additional citation omitted)). We therefore deny the Motion to Dismiss Count One as against these four Defendants.

        2.        Defendants Mendez, Balmer, and Johnson

Defendants argue that the Complaint is "utterly devoid" of any facts alleging personal involvement of Officers Balmer and Mendez. (Defs.' Mot. to Dismiss at 9.) Defendants further contend that while the Complaint may be understood to allege that Officer Johnson was present when Verrecchia was arrested, it does not allege that he himself took any specific action in connection with the arrest. Plaintiffs concede that the Complaint's factual allegations do not specifically allege any actions taken by Officers Mendez, Balmer, and Johnson. However, Plaintiffs contend that the Complaint alleges that Officers Balmer and Mendez were "additional officers involved in investigating and recommending criminal charges against Verrecchia," and that Officer Johnson is named as one of the officers "charged as committing excessive force

against plaintiffs." (Pls.' Resp. at 3.) Moreover, Plaintiffs contend that the police reports that they attach to their Response to Defendants' Motion to Dismiss indicate that those officers were responsible for initiating the arrest of Verrecchia pursuant to their roles as investigating and/or arresting officers. (Id. at 3-4, Ex. A.)

We may consider the police reports in resolving Defendants' Motion because they are specifically referenced in the Complaint and Defendants do not contest their authenticity. (Compl. ¶ 22); see Mayer, 605 F.3d at 230 (citing Pension Benefit Guar. Corp., 998 F.2d at 1196); U.S. Airline Pilots Ass'n v. U.S. Airways, Inc., 604 F. App'x 142, 148 n.11 (3d Cir. 2015) (stating that, on a motion to dismiss, the court may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions" (citing Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002))). However, contrary to Plaintiffs' suggestion, the reports do not reflect any personal involvement by Officers Balmer, Mendez and Johnson. Moreover, the Complaint itself does not allege any personal involvement by Officers Balmer, Mendez, and Johnson. To the contrary, the only mention of Officer Balmer and Officer Mendez in the Complaint is in the case caption and the heading to Count One. Similarly, Officer Johnson is only mentioned in the caption, in the headings to Counts One and Two, and in Paragraph 49, which refers to Johnson's "acts described above" in spite of there being no prior factual allegations concerning Officer Johnson in the Complaint. (Compl. ¶ 49.) Consequently, we grant the Motion to Dismiss Count One as against Officers Balmer, Mendez, and Johnson because the Complaint wholly fails to allege that any of these Defendants had any personal involvement in Verrecchia's arrest, false imprisonment, or malicious prosecution.

B.     Count Two

Count Two of the Complaint asserts a § 1983 claim against Officer Johnson for the use of excessive force when arresting Verrecchia in violation of the Fourth and Fourteenth Amendments.[5] The Complaint alleges that actions taken by Officer Johnson and actions taken by other officers in knocking in Plaintiffs' residence door, drawing their guns, roughly handling Verrecchia during the arrest, and pushing Camp, constituted excessive use of force. (Compl. ¶¶ 31-33, 39.)   Defendants argue that Count Two should be dismissed because the Complaint fails to allege facts that would establish that Officer Johnson used excessive force during Verrecchia's arrest.

The Complaint specifically alleges that "Defendant Johnson's acts described above and the acts of . . . other . . . defendant police officers in breaking down plaintiffs' residence door, drawing guns on them, pushing plaintiff Camp and manhandling and dragging plaintiff Verrecchia, constituted excessive force." (Id. ¶ 49; see also id. ¶ 39.)  As noted earlier, however, the prior factual allegations of the Complaint do not mention Officer Johnson and, thus, there are no "acts [of Johnson] described above." (Id. ¶ 49.)  As such, the Complaint does not specifically allege that Officer Johnson engaged in any misconduct, much less the excessive force described in the Complaint.  Moreover, the police reports that Plaintiffs have submitted with their Response to Defendants' Motion, merely state that Officer Johnson was present during

---

[5] To state a claim for excessive force in violation of the Fourth Amendment, a complaint must allege "that a 'seizure' occurred and that [such seizure] was unreasonable." Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999) (quoting Brower v. Cty of Inyo, 489 U.S. 593, 599 (1989)).  "A claim that a police officer used excessive force during a seizure is 'properly analyzed under the Fourth Amendment's "objective reasonableness" standard.'" Johnson v. City of Phila., 837 F.3d 343, 349 (3d Cir. 2016) (quoting Graham v. Connor, 490 U.S. 386, 388 (1989)).

Verrecchia's arrest, which does not provide a factual basis on which to base a plausible claim that Officer Johnson is liable for an unconstitutional use of excessive force.

In sum, we find that, even viewing the Complaint in the light most favorable to Plaintiffs, and considering the police reports the Plaintiffs have submitted, the Complaint does not state a facially plausible claim against Officer Johnson for excessive force in violation of the Fourth and Fourteenth Amendments. Although the Complaint clearly alleges that excessive force was used in Verrecchia's arrest, it fails to connect the alleged misconduct to Officer Johnson. Due to this deficiency, we grant Defendants' Motion to Dismiss as to Count Two.

    C.    Count Five

Count Five of the Complaint asserts a Monell claim against the City of Philadelphia for violating Plaintiffs' constitutional rights by having a pattern, practice and/or custom of failing to train, supervise, and discipline its police officers with regard to (1) arresting individuals without probable cause; (2) imprisoning individuals without probable cause; (3) malicious prosecution; and (4) excessive force. (Compl. ¶¶ 58-59.)

A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Accordingly, when a § 1983 claim is asserted against a municipality, the complaint must allege that the plaintiffs' constitutional rights were violated by the execution of an official policy or custom of the municipality. Id.; see also Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403 (1997) ("[I]n Monell and subsequent cases, we have required a Plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the Plaintiff's injury." (citations omitted)). Consequently, a municipal entity may be liable under § 1983 only if it implements or executes a policy, regulation or decision officially adopted by the

governing body or informally adopted by custom. Monell, 436 U.S. at 690-91, 694. In order to state a facially plausible claim against a municipality under § 1983, the complaint must thus allege: (1) a policy or custom that deprived the plaintiff of a federally protected right, (2) that the municipality, by its "deliberate conduct," acted as the "moving force" behind the alleged deprivation, and (3) "a direct causal link between the municipal action and the deprivation of federal rights." Brown, 520 U.S. at 404.

A municipal policy is defined as a "'statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers.'" Simmons v. City of Phila., 947 F.2d 1042, 1059 (3d Cir. 1991) (alteration in original) (quoting Monell, 436 U.S. at 690). A custom is defined as "an act 'that has not been formally approved by an appropriate decision-maker,' but that is 'so widespread as to have the force of law.'" Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Brown, 520 U.S. at 404).

Significantly, a municipality "cannot be deemed to have engaged in a constitutional violation by virtue of a policy, custom, or failure to train" in the absence of a "conscious decision or deliberate indifference of some natural person." Simmons, 947 F.2d at 1063. Consequently, the complaint must allege facts showing "that a policymaker is responsible either for the policy or, through acquiescence, for the custom." B.S. v. Somerset Cty., 704 F.3d 250, 275 (3d Cir. 2013) (quotation and citations omitted). A policymaker is an official with "final unreviewable discretion to make a decision or take an action." Andrews v. City of Phila., 895 F.2d 1469, 1481 (3d Cir. 2009) (discussing City of St. Louis v. Prapotnick, 485 U.S. 112, 127, 142 (1988)). Accordingly, to state a Monell claim upon which relief may be granted, a complaint must include the identity of the municipality's final policymaker and factual allegations that "link the alleged

offending policies or customs to" the final policymaker. Rees v. Office of Children & Youth, 473 F. App'x 139, 143 (3d Cir. 2012).

To state a claim against a municipality for failure to train, a complaint must allege facts establishing that the municipality's failure to train "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] came into contact.'" Connick v. Thompson, 563 U.S. 51, 61 (2011) (second alteration in original) (quoting Canton v. Harris, 489 U.S. 378, 388 (1989)) "'[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" Id. (alteration in original) (quoting Brown, 520 U.S. at 410). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deliberately indifferent if the policymakers choose to retain that program." Id. (citing Brown, 520 U.S. at 407). Consequently, in order to state a Monell claim for failure to train, it is "'ordinarily necessary'" for a complaint to allege facts establishing "[a] pattern of similar constitutional violations by untrained employees." Id. at 62 (quoting Brown, 520 U.S. at 409).

Defendants argue that Count Five should be dismissed because it does not allege a facially plausible Monell claim against the City of Philadelphia. Specifically, Defendants argue that the Complaint does not allege any facts regarding a municipal policy or custom, identify a policymaker, or allege prior instances of police misconduct caused by inadequate training. Defendants contend that the Complaint consists of "vague and general allegations" that simply "parrot[]" the elements of a Monell claim without any specific factual allegations. (Defs.' Mot. to Dismiss at 6-7.)

The Complaint alleges that the City of Philadelphia has a pattern, practice, and/or custom of failing to train, supervise, and discipline its police officers. (Compl. ¶¶ 43-44, 58.) The Complaint further alleges that the City of Philadelphia is aware that the individual Defendant Officers have falsely arrested, falsely imprisoned, and maliciously prosecuted citizens, and have subjected citizens to excessive force, and yet the City has failed to take action in response to these violations, which proximately led to Plaintiffs' harm. (Id. ¶ 59.) However, the Complaint wholly fails to allege any specific facts supporting these conclusions of law and also fails to identify the final policymaker responsible for the alleged customs, patterns, and practices, or any prior instances of similar misconduct by untrained police officers, all of which are required to state a cognizable Monell claim. Simmons, 947 F.2d at 1063; Connick, 563 U.S. at 62. Consequently, Count Five of the Complaint fails to allege a facially plausible Monell claim against the City. We therefore grant the Defendants' Motion to Dismiss Count Five of the Complaint.

## IV.   CONCLUSION

For the reasons stated above, we deny Defendants' Motion to Dismiss as to the claims against Officers Tague, Guarna, Krause, and Dougherty in Count One, but grant the Motion as to the claims asserted against Officers Mendez, Balmer, and Johnson in Count One, as well as to Count Two and the Monell claims in Count Five.

Plaintiffs have requested that we grant them leave to amend if we find any of their claims to be deficient. "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008) (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)). Here, we are not convinced that amendment of Plaintiffs' claims is either

inequitable or futile. We therefore grant Plaintiffs leave to amend the Complaint. An appropriate Order follows.

                              BY THE COURT:

                              <u>/s/ John R. Padova, J.</u>
                              John R. Padova, J.